STATE OF INDIANA ON THE RELATION OF THE MENTAL HEALTH COMMISSIONER, WILLIAM ELLSWORTH MURRAY, M.D. *v.* ESTATE OF MERLE R. RIGGENS.

[No. 3-1173A153. Filed May 29, 1975.]

*Theodore L. Sendak,* Attorney General, *A. Frank Gleaves, III,* Deputy Attorney General, for appellant.

*George M. Bowser, Bowser & Geberin,* of Warsaw, for appellee.

HOFFMAN, J.—This is an appeal by plaintiff-appellant the State of Indiana (the State) from the denial of its claim against defendant-appellee the Estate of Merle R. Riggens (the Estate). The State filed a claim against the Estate seeking the recovery of an alleged indebtedness of the Estate in the amount of $9,626.62 for the maintenance of Kenneth L. Riggens, the son of the decedent, in Beatty Memorial Hospital. The facts were stipulated by the parties and the trial court, after considering briefs filed by the parties, found in favor of the Estate and disallowed the State's claim. The State timely filed its motion to correct errors which was overruled, and subsequently perfected this appeal.

The facts of this cause were stipulated by the parties to be as follows:

"1. Kenneth L. Riggens was born January 28, 1937. His father was Merle R. Riggens with whom he resided,

and by whom he was supported, at the father's home at Warsaw, Kosciusko County, Indiana, until May, 1957.

"2. After May, 1957, Kenneth L. Riggens maintained his own home and worked for his own living outside of the said county of his parents' home, and was never supported by his father after May, 1957. On October 2, 1957, he was committed by a court outside of Kosciusko County to the Indiana Reformatory for a term of 2 to 5 years.

"3. On November 5, 1962, Kenneth L. Riggens was regularly committed by the LaPorte County Circuit Court to the Dr. Norman M. Beatty Memorial Hospital on a petition of a party other than Merle R. Riggens. It does not appear that Merle R. Riggens had notice of such commitment of his said son to the hospital.

"4. Kenneth L. Riggens was a patient continuously at Dr. Norman M. Beatty Memorial Hospital from November 5, 1962 through June 8, 1968, inclusively. Said hospital furnished and provided service, care, maintenance, and support for said Kenneth L. Riggens of the value of Nine thousand six hundred twenty-six and 62/100 dollars ($9,-626.62) the sum of said bill being correctly computed pursuant to statute.

"5. Merle R. Riggens during the aforementioned period was financially unable to provide support for anyone other than himself.

"6. No notice was provided to Merle R. Riggens of his alleged responsibility during his lifetime."

Appellant-State contends that Merle R. Riggens was liable during his life for the cost of maintaining his son in Beatty Memorial Hospital, and that his Estate continues to be so liable.

It is the general rule in Indiana that a parent is not civilly liable for the support of his children after their emancipation. The cases recognize, though, a continuing duty of support to unemancipated children who are so mentally or physically defective as to be unable to support themselves after coming of age. However, once a child capable of his own support is emancipated, a subsequent change in his condition does not revive any liability in his parents for his support. See: *Pocialik* v. *Fed. Cement Tile Co.* (1951), 121 Ind. App. 11, at 18, 97 N.E.2d 360, at 363, and cases cited therein.

During the period that Kenneth Riggens was a patient in Beatty Memorial Hospital for which the State sought compensation in the trial court, there were certain statutes in effect which arguably imposed upon Merle Riggens a responsibility for the care of his patient-son greater than under the general rules stated above. The responsibility created under such statutes was to the State for amounts expended by the Department of Mental Health in caring for the adult offspring. Because the State is now seeking to enforce a remedy under such statutes, this court must be mindful in ruling upon the liability of the Estate that statutes which create remedies for rights unknown to the common law must be construed strictly both as to the cases embraced within their terms and the methods to be pursued. *Shupe* v. *Bell, et al.* (1957), 127 Ind. App. 292, 141 N.E.2d 351. Further, in construing a statute the primary objective is to ascertain and effectuate its general intendment, if possible. *Kirby* v. *Indiana Employment Security Board* (1973), 158 Ind. App. 643, 304 N.E.2d 225.

The following portions of the statutes here at issue are germane to the disposition of this cause:

"Cost of maintenance—Liability—Per capita cost.— (a) Each patient in a psychiatric hospital of this state, and the responsible relatives of the patient, individually or collectively, are liable for the payment of the cost of treatment and maintenance of such patient." IC 1971, 16-14-18-2 (Burns Code Ed.).

"(5) A 'responsible relative' means the husband or wife, or the parent of any patient in any psychiatric hospital, and shall include the adult child of any such patient, which adult child is legally responsible for the care and maintenance of such patient." Acts 1955, ch. 339, § 1, p. 1068, Ind. Ann. Stat. § 22-409 (5), (Burns 1964 Repl.).[1]

"The division [department] may issue to any of the persons liable under this act, statements of sums due as maintenance charges, requiring them to pay monthly, quar-

---

1. This definition was changed by Acts 1969, ch. 362. The present definition of "responsible relative" is found in IC 1971, 16-14-18-1(5).

terly, or otherwise as may be arranged, an amount not exceeding the maximum cost as determined under this act." IC 1971, 16-14-18-6 (Burns Code Ed.).

"The billing and collection of the maintenance expense as provided for in section 2 [16-14-18-2] *shall be made* by the division [department] \*\*\*." (Emphasis supplied.) IC 1971, 16-14-18-3 (Burns Code Ed.).

"The division [department] may agree to accept payment at a lesser rate than that prescribed by this article. *The division [department], in determining whether or not to accept the lesser amount, shall take into consideration the amount of money which may be necessary to maintain or support any member of the family of the patient.* All agreements to accept a lesser amount shall be subject to cancellation or modification at any time by the division [department]. *Any person who has been issued a statement of sums due as maintenance charges may petition the division [department] for a release from or modification of such statement,* and the division [department] shall provide for hearings to be held on any such petition. \*\*\*." (Emphasis supplied.) IC 1971, 16-14-18-5 (Burns Code Ed.).

Upon a reading of these portions of such statutes it is an inescapable conclusion that our Legislature intended the Department of Mental Health to have the power to issue to responsible relatives statements of amounts due it, and that the Department was intended to issue such statements. See: IC 1971, 16-14-18-6, *supra,* and IC 1971, 16-14-18-3, *supra.* Further, it is apparent that under this statutory scheme one must be billed by the Department in order to petition it to reduce or forgive the amounts due. And, once a responsible relative of the patient has so petitioned, the statutes require that the Department must consider the support needs of such responsible relative. This is because only members of the patient's family can be considered as responsible relatives under the statutes applicable to the case at bar. See: IC 1971, 16-14-18-5, *supra,* and IC 1971, 16-14-18-1 (Burns Code Ed.).

An examination of the statutory scheme now under consideration thus reveals a legislative intent that the Department

must attempt to give timely notice to individuals of its determination to consider them liable for the costs of treatment of a patient by issuing a statement for such costs. This statutory scheme further evidences a legislative intent that such an individual must be afforded an opportunity as nearly contemporaneous as possible with any incurrence of liability to contest such determination or to show his inability to pay such costs.

In the case at bar, it is undisputed that Merle Riggens never was issued a statement for the costs of treatment of his son. Even assuming *arguendo* that Merle Riggens could properly have been held liable for such costs, he had no notice that the Department would ever seek payment from him, no opportunity to contest the determination to consider him liable, and no opportunity to show his inability to pay such costs.

Furthermore, it is stipulated that if Merle Riggens had been billed, by reason of his personal support needs he would have been able to show an inability to pay any part of the costs of treatment of his son. Because the Department is bound under the statutes to consider the support needs of a family member of the patient in agreeing to lower or forgive amounts due it, Merle Riggens could have obtained a total forgiveness of amounts due so long as his inability to pay continued.

Inasmuch as the State has failed to follow the statutorily prescribed procedures and has contravened legislative intent in attempting to collect treatment costs from Merle Riggens as it did, no liability accrued to Riggens during his life. *Cf: Stayner* v. *Nye* (1949), 227 Ind. 231, 85 N.E.2d 496. It necessarily follows that there can be no just claim against Riggens' estate for such costs.

This court may look to the decisions of the courts of other States in construing similar statutory provisions. *City of Muncie* v. *Campbell* (1973), 156 Ind. App. 59, 295 N.E.2d 379 (transfer denied). The courts of at least one other State have advanced reasoning based upon grounds of public policy in construing similar statutes.

In the case of *In Re Mangan's Will* (1948), 83 N.Y.S.2d 393, at 405-406, the New York Court stated:

"There are some cases which more or less turn on the fact of failure to assert a claim during the lifetime of a decedent relative whose estate is sought to be held liable. Examples of such cases are Matter of Willis' Estate, 1916, 94 Misc. 29, 158 N.Y.S. 985; affirmed 175 App. Div. 933, 161 N.Y.S. 1150; and Matter of Cross' Estate, 1917, 99 Misc. 199, 165 N.Y.S. 710. These cases hold that there was a waiver or estoppel by reason of failure to assert liability against the deceased relative in his lifetime. These cases seem equitable in holding that where the relative was never contacted during his lifetime, or, having been investigated, has in no matter concealed his assets, that the doctrine of estoppel should be recognized or waiver implied. Thus there would be no lulling the relative to sleep in a false sense of security, no possibly unfair advantage taken of him, perhaps after years of hard work resulting in a competence for his old age and a small potential residue for the benefit of his children after his death.

Similarly, in the case of *In Re Hessney's Will* (1941), 31 N.Y.S.2d 980, at 984-985, the court stated:

"In support of its claim, the State presented evidence to the effect that the patient was poor and indigent and that her husband was not of sufficient ability to support and maintain her. No proof is to be found in the record that the claimant [State] ever applied for or obtained an order of remissness directing the decedent to maintain his insane daughter, nor is there any proof that the claimant at anytime made any demands upon the decedent or gave him any notice of any kind that it would look to him or his estate for the payment of the cost of maintenance of the incompetent.

In Matter of Willis' Estate, 94 Misc. 29, 158 N.Y.S. 985, 989, affirmed 175 App. Div. 933, 161 N.Y.S. 1150 the Court, in holding that the claim of the State of New York for the maintenance of a patient in the Hudson River State Hospital against the Estate of the patient's mother should be dismissed, said: 'I am of the opinion that, as the liability for the maintenance of the incompetent was purely a statutory one, it is incumbent upon the claimant in question before it can recover to show that it has taken all the steps required by statute to create and fix the liability [citation omitted] and it must be enforced in the manner provided by the statute. [citation omitted]. ***.

"The statutes now in force contain the same provisions as were found in the statutes at the time of the decision of the Willis case. I do not find that that decision has ever been overruled or reversed. By requiring the State to obtain an order establishing the remissness of one whom it intends to charge with liability, an opportunity is given to the one so proceeded against to present to the Court facts respecting the financial ability of the other persons upon whom liability may be imposed, and the Court is then in a position to require maintenance to be provided by those best able to provide it, and to give effect to the general legal responsibility of husbands for the support of their wives and fathers and mothers for the support of their minor children."

For the reasons stated hereinabove, the judgment of the trial court is affirmed.

Affirmed.

Staton, P.J. and Garrard, J., concur.

NOTE.—Reported at 328 N.E.2d 248.